UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------

LARRY MCNAIR,                           :
                                        :
                    Plaintiff,          :        16-cv-1722 (LAP)
                                        :
        -against-                       :
                                        :        MEMORANDUM AND ORDER
                                        :
JOSEPH PONTE, et al.,                   :
                                        :
                    Defendants.         :
                                        :
------------------------------------x

LORETTA A. PRESKA, Senior United States District Judge:

Pro se Plaintiff Larry McNair ("McNair" or "Plaintiff")

brings this action pursuant to 42 U.S.C. § 1983, alleging

violations of his constitutional rights arising from an incident

that occurred while he was incarcerated at the Robert N. Davoren

Complex ("R.N.D.C.") on Riker's Island.  New York City

Department of Correction ("D.O.C.") Commissioner Joseph Ponte

("Ponte") has moved to dismiss the Second Amended Complaint

("SAC"), dated Jan. 30, 2018 [dkt. no. 34], in its entirety with

prejudice, pursuant to Federal Rules of Civil Procedure

12(b)(6), 16(f), and 41(b), and has further requested that the

Court deem McNair's claims abandoned.  (See Notice of Motion

(the "Motion to Dismiss"), dated Mar. 6, 2018 [dkt. no. 39], 1;

Defendant's Memorandum of Law in Support of His Motion to

Dismiss the Second Amended Complaint ("Motion to Dismiss Mem."),

1

dated Mar. 6, 2018 [dkt. no. 40], 1; Response in Support of the Motion to Dismiss ("Motion to Dismiss Response"), dated Apr. 27, 2018 [dkt. no. 43], 1-2.)[1]

For the reasons set forth below, the Motion to Dismiss [dkt. no. 39] is granted and the SAC [dkt. no. 34] is dismissed in its entirety with prejudice.

## I.  BACKGROUND

### A. Facts

On January 18, 2015, McNair was housed in "Housing Unit Six Upper North in the R.N.D.C."[2]  (SAC at 1.)  At approximately 5:30

---

[1] As discussed in more detail below, Ponte is the only Defendant McNair properly identified in the SAC.  As Ponte "moves to dismiss the [SAC] in its entirety," (Motion to Dismiss Mem. at 1), the Court construes the Motion to Dismiss as moving to dismiss all claims against all Defendants, defined at footnote 9 below, including those that have not been properly identified by McNair and, as such, have not joined Ponte in the Motion to Dismiss or filed separate motions to dismiss.

[2] Ponte contends that this date is incorrect, and, based on the discovery that Defendants produced pursuant to Local Civil Rule 33.2, should instead be January 18, 2016.  (See Motion to Dismiss Mem. at 2 n.2.)  "The Court construes the pro se Second Amended Complaint liberally, 'accepts all allegations in the complaint as true,' and 'draw[s] all inferences in the non-moving party's favor.'"  Henriquez-Ford v. Council of Sch. Supervisors & Adm'rs, No. 14-CV-2496 (JPO), 2016 WL 93863, at *1 (S.D.N.Y. Jan. 7, 2016) (quoting LaFaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009)).  As discussed below, the Court has previously held that McNair's "Notice of Motion to Defendants Letter Motion to Dismiss in Opposition" ("February 'Opposition'"), dated Feb. 28, 2018 [dkt. no. 38], is not technically a response to the Motion to Dismiss and will not be considered as such by the Court for purposes of deciding the Motion to Dismiss.  (See Order ("June 2018 Order"), (continued)

P.M. that day, during a discussion between McNair and Defendant "Caucasian Six Upper North C.O. R.N.D.C. John Doe"[3] about McNair's psychotropic medications, "Caucasian Six Upper North C.O. R.N.D.C. John Doe" sprayed McNair with a chemical agent at close range, even though McNair "did not pose a threat," was behind two steel doors, and "did not in fact make any physical contact with" "Caucasian Six Upper North C.O. R.N.D.C. John Doe." (Id. at 2-3.)

Before spraying McNair, "Caucasian Six Upper North C.O. R.N.D.C. John Doe" "ignored [a] custom and policy" requiring him to check with medical services to see whether McNair suffered from a medical condition where the use of a chemical agent on McNair could result in McNair's death. (Id. at 2.) Ponte, Defendant "R.N.D.C. Warden John Doe," and "Deputy Warden

---

(continued) dated June 16, 2018 [dkt. no. 44], 1.) However, the Court does acknowledge that the February "Opposition" also states that the date of the incident is January 18, 2016, not January 18, 2015. Accordingly, the Court takes judicial notice of the fact that the date of the incident is January 18, 2016. Tribble v. City of New York, No. 10 Civ. 8697(JMF), 2013 WL 69229, at *1 n.1 (S.D.N.Y. Jan. 3, 2013) (taking judicial notice of a date); Vasquez v. City of New York, No. 99 Civ. 4606(DC), 2000 WL 869492, at *1 n.1 (S.D.N.Y. June 29, 2000) (stating that, in deciding a motion to dismiss, courts may take judicial notice of matters of public record).

[3] As McNair switches between several names when describing the same Defendants in the body of the SAC, the Court uses the names listed in the SAC's caption in the interest of consistency and clarity.

Security John/Jane Doe,"[4] "created" this D.O.C. "policy and[]/or custom."[5]  (Id.)

McNair suffers from "serious and persistent" physical medical conditions, namely, congestive heart failure, high blood pressure, and seizures; due to these medical conditions, exposure to a chemical agent could result in McNair's death. (Id. at 2-3.)  McNair has previously received emergency treatment in the clinic for chest pains and difficulty breathing.  (Id. at 3.)  A medical permit states that McNair should not be exposed to chemical agents.  (Id.)  McNair also suffers from "persistent and serious" psychological medical conditions, namely, schizoaffective disorder, depression, and anxiety.  (Id.)

After spraying McNair, "Caucasian Six Upper North C.O. R.N.D.C. John Doe" pressed his "P.B.A. button."  (Id. at 2.) McNair was then escorted to the R.N.D.C.'s intake area by Defendant "R.N.D.C. Intake C.O. African American John Doe." (Id.)  Once there, "R.N.D.C. Intake C.O. African American John

---

[4] "Deputy Warden Security John/Jane Doe" is not listed as a defendant in the SAC's caption; he or she appears only in the body of the SAC.  As explained below, because of McNair's failure to follow court orders instructing him to properly identify the Defendants, the Court does not consider "Deputy Warden Security John/Jane Doe" a defendant in this case for purposes of deciding the Motion to Dismiss.
[5] For purposes of the forthcoming analysis, this policy or custom is referred to as the "Medical Condition Policy or Custom."

Doe" refused to have McNair seen by medical staff. (Id.) "R.N.D.C. Intake C.O. African American John Doe" also did not decontaminate McNair following his exposure to the chemical agent, as required by "their custom [or] policy."[6] (Id.) Due to "R.N.D.C. Intake C.O. African American John Doe's" failure to provide McNair such medical care, Defendant "African American Captain John Doe" failed in "his duty and responsibility" to provide McNair "access to adequate and prompt medical care and tre[a]tment consistent with the minimum standards of the Board of C[o]rrection Staff." (Id.)

As a result of the incident, McNair now suffers from blurred vision, depression, heightened anxiety, auditory hallucinations, suicidal ideations, nightmares, increased cardiac problems, and wears a pacemaker in his chest for "low percentage of ejection fraction." (Id. at 3-4.)

### B. Relevant Procedural History

On March 7, 2016, McNair filed the Complaint, alleging essentially the same facts as set forth above. (See Complaint, dated Mar. 7, 2016 [dkt. no. 2].) In the Complaint, McNair alleged that the date of the incident was January 18, 2016 and identified the defendants in the Complaint's caption as follows:

---

[6] For purposes of the forthcoming analysis, this policy or custom is referred to as the "Decontamination Policy or Custom."

"N.Y.C.D.O.C. Comm. Joseph Ponte"; "R.N.D.C. Warden K. Collins"; "Deputy Warden Securit[y] Phipps"; "Captain Antoine"; and "C.O. 6[]Upper North Caucasian John Doe 3:00 to 11:00 P.M. 1/18/16." (Id. at 1, 3.)

In accordance with Valentin v. Dinkins, 121 F.3d 72, 76 (2d Cir. 1997) (per curiam), the Court ordered the New York City Law Department, which is the attorney for and agent of D.O.C., to ascertain the identity of "the white male officer who worked the 3:00 pm to 11:00 pm shift at '6 upper north' at the RNDC on January 18, 2016" named in the Complaint (the "Complaint John Doe Defendant"). (See Order of Service ("Valentin Order"), dated May 13, 2016 [dkt. no. 10], 1-2.) The Court ordered the New York City Law Department to provide this information to McNair and the Court within sixty days of the date of the Valentin Order. (Id. at 2.) McNair was ordered to file an amended complaint that named the Complaint John Doe Defendant within thirty days of receiving that information. (Id.)

On July 12, 2016, the New York City Law Department timely filed a letter in response to the Valentin Order identifying the Complaint John Doe Defendant as former Correction Officer R. Gorle ("Gorle"). (See Letter ("Valentin Response"), dated July 12, 2016 [dkt. no. 18], 1.) Pursuant to the Valentin Order, McNair had thirty days from July 12, 2016, or until August 11,

2016, by which to file an amended complaint. (See Valentin Order at 2.)

By Order dated August 17, 2017, the Court noted that McNair had failed to file an amended complaint within thirty days of receiving the Valentin Response identifying Gorle and gave McNair "one final opportunity to file an amended complaint no later than September 15, 2017." (See Order ("August 2017 Order"), dated Aug. 17, 2017 [dkt. no. 27], 1.) The Court warned McNair that "[f]ailure to file timely may result in dismissal of the action." (Id.)

McNair timely filed an amended complaint on September 14, 2017. (See Civil Mrights [sic] Amended Complaint ("AC"), dated Sept. 14, 2017 [dkt. no. 28].) In the AC, McNair alleged that the date of the incident was "May and around the middle of May" and identified the defendants in the AC's caption as follows: "R.N.D.C. Warden John/Jane Doe"; "N.Y.C.D.O.C.S. Comm. Joseph Ponte"; "Dorm Two African American Jane Doe C.O."; "Deput[y] []Warden Security John/Jane Doe"; and "Six Upper North C[au]casian C.[O]. John Doe."[7] (Id. at 1.)

---

[7] It appears McNair inadvertently did not include a semicolon between "Dorm Two African American Jane Doe C.O." and "Deput[y] []Warden Security John/Jane Doe" in the AC's caption. The Court liberally construes the AC to be brought against these two individuals, rather than one individual named "Dorm Two African American Jane Doe C.O. Deput[y] []Warden Security (continued)

On October 2, 2017, Ponte filed an answer to the AC. (See Answer to the "Civil Rights" Amended Complaint by Defendants, dated Oct. 2, 2017 [dkt. no. 29].)

On January 18, 2018, the Court held an Initial Pretrial Conference. At the Initial Pretrial Conference, Ponte asserted that McNair's pleadings contained several deficiencies. Specifically, Ponte argued that McNair alleged that the incident occurred on different dates in the Complaint and AC. (See Transcript of Jan. 18, 2018 Initial Pretrial Conference ("Init. Pre. Conf. Tr."), dated Feb. 20, 2018 [dkt. no. 36], 3:1-3:8.) Ponte also argued that, despite previously identifying certain defendants by name in the Complaint, McNair identified those same defendants as "John Does" in the AC. (Id. at 4:4-4:15.) Additionally, Ponte noted that, despite being provided the identify of the Complaint John Doe Defendant by the New York City Law Department on July 12, 2016, McNair did not name that defendant in the AC. (Id. at 4:7-15, 5:1-3.)

On January 19, 2018, pursuant to the discussion during the January 18, 2018 Initial Pretrial Conference, "the Court

---

(continued) John/Jane Doe." Further, for purposes of the forthcoming analysis, "R.N.D.C. Warden John/Jane Doe," "Dorm Two African American Jane Doe C.O.," "Deput[y] []Warden Security John/Jane Doe," and "Six Upper North C[au]casian C.[O]. John Doe" are collectively referred to as the "AC John Doe Defendants."

grant[ed] [McNair] permission to amend the [AC] no later than February 1, 2018." (Order ("January 2018 Order"), dated Jan. 19, 2018 [dkt. no. 33], 1.)[8]

On January 30, 2018, McNair timely filed the SAC. In the SAC, McNair alleged that the date of the incident was January 18, 2015 and identified the defendants in the SAC's caption as follows: "N.Y.C.D.O.C. Comm. Joseph Ponte"; "R.N.D.C. Warden John Doe"; "Caucasian Six Upper North C.O. R.N.D.C. John Doe"; "African American Captain John Doe"; and "R.N.D.C. Intake C.O. African American John Doe."[9] (SAC at 1.)

On February 12, 2018, Ponte advised the Court that he intended to move for dismissal in lieu of an answer and requested the Court's endorsement of a briefing schedule. (See

---

[8] The January 2018 Order erroneously states that McNair was "grant[ed] . . . permission to amend the Second Amended Complaint." (January 2018 Order at 1.) The January 2018 Order should have stated that he was granted permission to amend the Amended Complaint, thereby allowing him to file a Second Amended Complaint.

[9] For purposes of the forthcoming analysis, Ponte, "R.N.D.C. Warden John Doe," "Caucasian Six Upper North C.O. R.N.D.C. John Doe," "African American Captain John Doe," and "R.N.D.C. Intake C.O. African American John Doe" are collectively referred to as the "Defendants." "R.N.D.C. Warden John Doe," "Caucasian Six Upper North C.O. R.N.D.C. John Doe," "African American Captain John Doe," and "R.N.D.C. Intake C.O. African American John Doe" are collectively referred to as the "SAC John Doe Defendants." Ponte, "R.N.D.C. Warden John Doe," and "African American Captain John Doe" are collectively referred to as the "Supervisory Defendants." "Caucasian Six Upper North C.O. R.N.D.C. John Doe" and "R.N.D.C. Intake C.O. African American John Doe" are collectively referred to as the "Non-Supervisory Defendants."

Letter Motion ("Ponte's February 12, 2018 Letter"), dated Feb. 12, 2018 [dkt. no. 35].)

On February 28, 2018, McNair filed the February "Opposition." In the February "Opposition," McNair included exhibits identifying the date of the incident as January 18, 2016 and identified the defendants in the February "Opposition's" caption as follows: "N.Y.C.D.O.C. Comm. Joseph Ponte"; "R.N.D.C. Warden Collins"; "Captain Antoine"; and "C.O. R. Gorle." (February "Opposition" at 1, 6-14.)

On March 8, 2018, the Court ordered the following briefing schedule: Ponte's Motion to Dismiss was due no later than March 6, 2018; McNair's opposition was due no later than April 6, 2018; and Ponte's reply, if any, was due no later than April 27, 2018. (See Order ("March 2018 Order"), dated Mar. 8, 2018 [dkt. no. 42], 3.) Ponte timely served McNair with the Motion to Dismiss by mail on March 6, 2018, two days prior to the issuance of the March 2018 Order. (See Declaration of Service, dated Mar. 6, 2018 [dkt. no. 39-2], 1.) On April 27, 2018, Ponte filed his Motion to Dismiss Response.

By Order dated June 19, 2018, the Court noted that McNair filed the February "Opposition" in response to Ponte's February 12, 2018 Letter. (June 2018 Order at 1.) Accordingly, the Court held that, because the February "Opposition" was filed

10

prior to the Motion to Dismiss, it was "not technically a response to the [M]otion [to Dismiss]." (Id.)  The Court ordered McNair to inform it by July 3, 2018 if he wanted it to consider the February "Opposition" as his opposition to the Motion to Dismiss or if he wanted to file a separate opposition to the Motion to Dismiss. (Id. at 1-2.)  The Court warned McNair that his "[f]ailure to respond may result in the granting of the [M]otion [to Dismiss]." (Id. at 2.)

## II.  LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To meet this standard, a complaint's factual allegations must permit the Court "to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.  A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. Id. at 678 (quoting Twombly, 550 U.S. at 557).  Nor does a complaint suffice if it lacks factual allegations sufficient "to give the defendant fair

notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007). Further, Federal Rule of Civil Procedure 9(f) provides that "[a]n allegation of time or place is material when testing the sufficiency of a pleading." FED. R. CIV. P. 9(f).

When plaintiffs proceed pro se, the Court must construe their complaints liberally and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (alteration in original) (citation omitted). "Applying the pleading rules permissively is particularly appropriate when . . . a pro se plaintiff alleges civil rights violations." Rivera v. Westchester County, No. 17 CV 9776 (VB), 2018 WL 6181365, at *2 (S.D.N.Y. Nov. 27, 2018).

However, "[e]ven in a pro se case . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation omitted). Nor may the Court "invent factual allegations" a pro se plaintiff has not himself pled. Id.

## B. Federal Rules of Civil Procedure 16(f) and 41(b)

"[W]hile pro se litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including pro ses, have an obligation to comply with court orders" and to diligently advance their cases. Rudder v. Jimenez, No. 11 Civ. 3453 (VSB) (JLC), 2014 WL 1349047, at *3 (S.D.N.Y. Apr. 7, 2014) (citation omitted), report and recommendation adopted, No. 11 Civ. 3453 (LTS) (JLC), 2014 WL 2855012 (S.D.N.Y. June 23, 2014). The Court of Appeals has repeatedly held that a failure to do so may result in dismissal of the action. Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009); see also Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 42-43 (2d Cir. 1982) (explaining a litigant's duty to prosecute his case diligently is "vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts").

Rule 16(f)(1)(C) of the Federal Rules of Civil Procedure provides: "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party . . . fails to obey a scheduling or other pretrial order." FED. R. CIV. P. 16(f)(1)(C). One such sanction is dismissal of the action or proceeding under Federal Rule of Civil Procedure 37(b)(2)(A)(v). Although dismissal is "a harsh

remedy," the Court of Appeals has held that it "may be imposed even against a plaintiff who is proceeding pro se, so long as warning has been given that noncompliance can result in dismissal." Valentine v. Museum of Modern Art, 29 F.3d 47, 49-50 (2d Cir. 1994) (citation omitted). Similarly, under Federal Rule of Civil Procedure 41(b), the Court is authorized to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." FED. R. CIV. P. 41(b).

The "same standards govern dismissal under both [16(f) and 37(b)]." Camara v. Daise, No. 98 CIV 808 RMB RLE, 2001 WL 263006, at *5 (S.D.N.Y. Mar. 9, 2001). The Court "may dismiss an action pursuant to Rule 37(b)(2) where (1) the party has demonstrated willfulness, bad faith or fault, (2) less drastic sanctions will not work, and (3) the party has been warned of the risk of dismissal for failure to comply with court orders." Id.

Further, "[f]or practical purposes, courts have found that the factors to be addressed in a Rule 41(b) analysis are relevant to an analysis under Rule 37(b), and there is little distinction between the two." Sanders v. Does, No. 05 Civ. 7005 (RJS), 2008 WL 2117261, at *2 (S.D.N.Y. May 15, 2008). Those Rule 41(b) factors are:

14

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

Dones v. Smalls, No. 17-CV-6038 (JPO), 2018 WL 4211314, at *1 (S.D.N.Y. Sept. 4, 2018) (citation omitted). No one of these five factors is generally dispositive. Id.

### C. Abandonment

A court "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." Lipton v. County of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004); see also Robinson v. Fischer, No. 09 Civ. 8882 (LAK) (AJP), 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) (collecting cases). This Court has deemed claims abandoned even in cases where the plaintiff was proceeding pro se. See, e.g., Porter v. Icahn House E., LLC, 12 Civ. 4909 (JMF), 2013 U.S. Dist. LEXIS 171019, at *1 (S.D.N.Y. Dec. 4, 2013) (deeming the pro se plaintiff's claims abandoned where he failed to oppose the defendant's motion to dismiss); Tribble, 2013 WL 69229, at *2-3 (deeming the pro se plaintiff's claims abandoned "[n]otwithstanding his stated intention [six months prior to the date of the order] to

15

pursue his claims," because the pro se plaintiff had not filed any opposition to the defendants' motion to dismiss, which was filed eight months earlier).

## III. **DISCUSSION**

### A. **Federal Rule of Civil Procedure 12(b)(6)**

It is well settled that the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (citation omitted); see also Iqbal, 556 U.S. at 676 (holding "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution" (emphasis added)). Accordingly, first and foremost, in order to have sufficiently stated his § 1983 claims, McNair was required to show the personal involvement of each Defendant in the conduct giving rise to those claims.

As set forth below, the Court finds "dismissal is required" as to the Supervisory Defendants "on grounds of [McNair's] failure to show the personal involvement of any [these] Defendant[s] in the alleged constitutional deprivation[s]." Quick v. Westchester County, No. 18-CV-243 (KMK), 2019 WL 1083784, at *5 n.3 (S.D.N.Y. Mar. 7, 2019). As such, "the Court need not resolve [the issue of McNair's] fail[ure] to allege

sufficient facts to state a [constitutional] violation" by any
of the Supervisory Defendants.[10]  Id.  On the contrary, as
discussed below, the Court finds that the Non-Supervisory
Defendants were personally involved in the conduct giving rise
to McNair's § 1983 claims.

---

[10] McNair attempts to bring a Monell claim against two of the
Supervisory Defendants:  Ponte and "R.N.D.C. Warden John Doe."
(See SAC at 2 (alleging these Supervisory Defendants are liable
"under municipal law whereas they . . . created a policy
and[]/or custom").)  In Monell v. Dep't of Soc. Servs., 436 U.S.
658 (1978), the Supreme Court set forth the standard for
evaluating the liability of municipalities under § 1983.  Ponte
and "R.N.D.C. Warden John Doe" cannot be liable under such a
theory because they are not municipalities.  See Segal v. City
of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Monell does not
provide a separate cause of action for the failure by the
government to train its employees; it extends liability to a
municipal organization where that organization's failure to
train, or the policies or customs that it has sanctioned, led to
an independent constitutional violation."); Price v. City of New
York, No. 15 Civ. 5871 (KPF), 2018 WL 3117507, at *6 (S.D.N.Y.
June 25, 2018) ("[I]t is not enough for the plaintiff to allege
that one of the municipality's employees or agents engaged in
some wrongdoing. The plaintiff must show that the municipality
itself caused the violation of the plaintiff's rights."
(emphasis added)).  Although McNair identifies Ponte as the
"N.Y.C. D.O.C. Comm." and presumably the "John Doe" as the
warden of the R.N.D.C., no municipal organization or entity,
including the D.O.C. or R.N.D.C., has ever been named as a
Defendant in this action.  Although McNair states, "t[hese] acts
were committed by the New Y[ork] City Department of Correction
entity acting under the color of state law," (SAC at 2), like
"Deputy Warden Security John/Jane Doe," D.O.C. is not listed as
a defendant in the SAC's caption; it appears only in the body of
the SAC.  As explained below, because of McNair's failure to
follow court orders instructing him properly to identify the
Defendants, the Court does not consider D.O.C. a defendant in
this case for purposes of deciding the Motion to Dismiss.

Liberally construing the SAC, as the Court must, see Henriquez-Ford, 2016 WL 93863, at *1, McNair purports to bring § 1983 claims of excessive force and deliberate indifference to conditions of confinement against "Caucasian Six Upper North C.O. R.N.D.C. John Doe" based on McNair's exposure to the chemical agent and § 1983 claims of deliberate indifference to medical needs and a violation of the Equal Protection Clause of the Fourteenth Amendment against "R.N.D.C. Intake C.O. African American John Doe" based on "R.N.D.C. Intake C.O. African American John Doe's" alleged failure to provide McNair with adequate medical care after he was sprayed with the chemical agent.

In § 1983 actions, parties may seek redress for "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Claims for deliberate indifference to conditions of confinement, deliberate indifference to medical needs, and excessive force are properly brought under the Eighth Amendment for convicted prisoners and the Fourteenth Amendment for pretrial detainees. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (deliberate indifference to conditions of confinement); Rodriguez v. County of Westchester, No. 15 Civ. 9626 (PAE), 2017 WL 118027, at *7 (S.D.N.Y. Jan. 11, 2017) (deliberate indifference to medical needs); Holmes v. City of New York, No. 17CV3874 (WHP), 2018 WL

4211311, at *2 n.1, *5 (S.D.N.Y. Sept. 4, 2018) (excessive force).

It had long been the case in this Circuit that "[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment," Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009), overruled by Darnell v. Pineiro, 849 F.3d 17 (2d Cir. 2017). Likewise, "[t]he same legal standard applie[d] to both Eighth and Fourteenth Amendment excessive force claims, regardless of the amendment under which they ar[o]se." Lewis v. Clarkstown Police Dep't, No. 11 Civ. 2487(ER), 2014 WL 6883468, at *3 (S.D.N.Y. Dec. 8, 2014).

However, "the relevant jurisprudence changed dramatically" in 2015. Little v. Mun. Corp., City of N.Y., No. 12-CV-5851 (KMK), 2017 WL 1184326, at *7 (S.D.N.Y. Mar. 29, 2017). In Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015), the Supreme Court "distinguished between Eighth and Fourteenth Amendment claims in holding that a pretrial detainee alleging that an officer used excessive force against him in violation of the Fourteenth Amendment need not demonstrate that such officer was subjectively aware that his use of force was unreasonable."

19

Ross v. Correction Officers John & Jane Does 1-5, 610 F. App'x
75, 76 n.1 (2d Cir. 2015) (citing Kingsley, 135 S. Ct. 2466,
2470-71); Little, 2017 WL 1184326, at *7 ("[T]he Supreme Court
concluded that plaintiffs bringing excessive force claims under
the Fourteenth Amendment do not need to satisfy the subjective
intent component of claims brought under
the Eighth Amendment.").

"Kingsley thus altered the test previously used in the
Second Circuit for claims arising under the Fourteenth
Amendment," Portillo v. Webb, No. 16 Civ. 4731 (VEC) (GWG), 2017
WL 4570374, at *4 (S.D.N.Y. Oct. 11, 2017), report and
recommendation adopted, No. 16-CV-4731 (VEC)(GWG), 2018 WL
481889 (S.D.N.Y. Jan. 17, 2018), including excessive force
claims and deliberate indifference claims, see Little, 2017 WL
1184326, at *8 ("[T]he Supreme Court's decision in Kingsley
revised the applicable standard for excessive force claims.");
Darnell, 849 F.3d at 34-35 (recognizing that Kingsley overruled
Second Circuit law in the Fourteenth Amendment "deliberate
indifference" context).

McNair alleges that his constitutional rights under both
the Eighth and Fourteenth Amendments were violated as a result
of the incident at issue in the SAC. (SAC at 1.) However, the
Court notes that "neither side has expressly stated" whether

McNair was a pretrial detainee or convicted prisoner while he was incarcerated the R.N.D.C. at the time of the incident. Nonetheless, for purposes of the forthcoming analysis, McNair "appears to have been a pretrial detainee at all times relevant here." Feliciano v. Anderson, No. 15-CV-4106 (LTS) (JLC), 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017); (see Letter from Larry McNair, dated Apr. 22, 2016 [dkt. no. 8], 1 ("I am considering taking a plea in my criminal matter.").

Accordingly, the Court shall proceed to evaluating the Non-Supervisory and Supervisory Defendants' respective personal involvement in the conduct giving rise to McNair's § 1983 claims before analyzing each of those four claims under their respective Fourteenth Amendment standards against the Non-Supervisory Defendants in turn.

## 1. Personal Involvement

### i. Non-Supervisory Defendants

"A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 . . . [if t]he defendant . . . directly participated in the infraction." Wingate v. Robert N. Davoren Ctr., No. 12 CIV. 5521(ALC), 2013 WL 4856573, at *5 (S.D.N.Y. Sept. 10, 2013). Here, McNair alleges "Caucasian Six Upper North C.O. R.N.D.C. John Doe" exposed McNair to a chemical agent and "R.N.D.C. Intake C.O.

African American John Doe" refused to have McNair seen by medical staff and did not decontaminate McNair after the exposure. (SAC at 2.)

"These allegations demonstrate a direct and tangible connection" to the misconduct alleged. Wingate, 2013 WL 4856573, at *5. As such, McNair has satisfied the personal involvement element of a § 1983 claim as to "Caucasian Six Upper North C.O. R.N.D.C. John Doe" and "R.N.D.C. Intake C.O. African American John Doe."

### ii. Supervisory Defendants

"[R]espondeat superior [does] not apply to the § 1983 claims," Greenfield v. City of New York, No. 99 CIV. 2330(AJP), 2000 WL 124992, at *10 (S.D.N.Y. Feb. 3, 2000) (citation omitted); instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," Iqbal, 556 U.S. at 676. Accordingly, a defendant may not be held liable under § 1983 solely because that defendant employs or supervises someone who violated the plaintiff's rights. See O'Dell v. Bill, No. 13-CV-1275 (FJS/TWD), 2015 WL 710544, at *4 (N.D.N.Y. Feb. 18, 2015) ("[S]upervisory officials may not be held liable merely because they held positions of authority." (citing Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)).

However, a supervisor's personal involvement may be established by showing:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

King v. Falco, No. 16 CV 6315 (VB), 2018 WL 6510809, at *6 (S.D.N.Y. Dec. 11, 2018) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).

Although "[t]he Second Circuit has not yet definitively decided which of the Colon factors remains a basis for establishing supervisory liability in the wake of Ashcroft v. Iqbal, 556 U.S. 662 (2009), which rejected the argument that 'a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.' Id. at 1949," Yolanda D. Tyson v. Town of Ramapo et al., No. 17-CV-4990 (KMK), 2019 WL 1331913, at *16 (S.D.N.Y. Mar. 25, 2019), "even assuming the continuing vitality of all of the Colon factors," Holmes v. Capra, No. 17-CV-01313 (NSR), 2018 WL 3117511, at *3 (S.D.N.Y. June 25, 2018), McNair has failed

plausibly to allege conduct by the Supervisory Defendants that falls into any one of the five categories identified above.

The gravamen of the SAC is that "Caucasian Six Upper North C.O. R.N.D.C. John Doe" sprayed McNair with a chemical agent and "R.N.D.C. Intake C.O. African American John Doe" refused to have McNair seen by medical staff and did not decontaminate McNair following his exposure to the chemical agent. (See SAC at 2.) Specific references to the Supervisory Defendants appear in the SAC only in the context of their supervision of the Non-Supervisory Defendants. (See id. (alleging that as "supervisory officials defendants," Ponte and "R.N.D.C. Warden John Doe" "created a policy and[]/or custom that requires the Defendants t[o] check with the medical services to inquir[e] as t[o] whether the [McNair] . . . has a medical condition where the use of any chemical agent exposure could result in [McNair's] death"); id. (alleging the Decontamination Policy or Custom was "their custom [or] policy");[11] id. (alleging that, due to "R.N.D.C. Intake C.O. African American John Doe's" failure to provide McNair medical care, "African American Captain John Doe"

---

[11] McNair expressly alleges that Ponte and "R.N.D.C. Warden John Doe" "created" the Medical Condition Policy or Custom. (Id.) As to the Decontamination Policy or Custom, McNair only alleges that it was "their custom [or] policy." (Id.) Liberally construing the SAC, see Henriquez-Ford, 2016 WL 93863, at *1, the Court finds that McNair alleges that all three Supervisory Defendants "created" the Decontamination Policy or Custom.

failed in "his duty and responsibility" to provide McNair "access to adequate and prompt medical care and tre[a]tment consistent with the minimum standards of the Board of C[o]rrection Staff").)

However, the SAC contains no allegations whatsoever that the Supervisory Defendants were involved in, aware of, or somehow permitted or ordered the alleged use of the chemical agent or the alleged refusal to provide medical care thereafter. The SAC does not even allege that they were present during the incident at issue. See Sash v. United States, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009). "And, to construe from" McNair's allegations that the Supervisory Defendants had any personal involvement in the purported use of the chemical agent or the purported refusal of medical care "would be pure speculation." Laporte v. Keyser, No. 14-CV-8293 (KMK), 2018 WL 794621, at *6 (S.D.N.Y. Feb. 8, 2018); see also Twombly, 550 U.S. at 555 (holding that "[f]actual allegations must be enough to raise a right to relief above the speculative level").

McNair's claim that the Supervisory Defendants "created" the alleged D.O.C. customs or policies under which unconstitutional practices occurred, (see SAC at 2), also fails because "it merely alleges a legal conclusion and thus fails as a matter of law." Lara-Grimaldi v. County of Putnam, No. 17-CV-

622 (KMK), 2018 WL 1626348, at *12 n.9 (S.D.N.Y. Mar. 29, 2018).
This Court has long recognized that "[t]hreadbare recitals of
the elements of a cause of action, supported by mere conclusory
statements, do not suffice." Id. (citing Iqbal, 556 U.S. at
678); see also Twombly, 550 U.S. at 555 (holding that although
the Court must take all of the factual allegations in the
complaint as true for the purposes of a motion to dismiss, the
Court is "not bound to accept as true a legal conclusion couched
as a factual allegation" (citation omitted)).

Not only does McNair fail sufficiently to allege any facts
indicating in any way how or when the Supervisory Defendants
created these policies or customs, but he also fails to allege
that unconstitutional practices flowed from them, as required by
Colon. King, 2018 WL 6510809, at *6 ("(3) the defendant created
a policy or custom under which unconstitutional practices
occurred. . . ." (quoting Colon, 58 F.3d at 873)). McNair also
does not allege that the Supervisory Defendants allowed the
continuance of either policy or custom; instead, McNair alleges
that he suffered harm because the Non-Supervisory Defendants
allegedly ignored these policies or customs. (See SAC at 2
(alleging that, before spraying McNair, "Caucasian Six Upper
North C.O. R.N.D.C. John Doe" "ignored" the Medical Condition
Policy or Custom); id. (alleging "R.N.D.C. Intake C.O. African
American John Doe" did not decontaminate McNair following his

26

exposure to the chemical agent, as required by the
Decontamination Policy or Custom).)

Further, "Second Circuit law has long taught that, even
within the context of the Colon framework, 'merely recit[ing]
the legal elements of a successful § 1983 claim for supervisory
liability . . . does not meet the plausibility pleading
standard.'" Samuels v. Fischer, 168 F. Supp. 3d 625, 636–37
(S.D.N.Y. 2016) (citation omitted). In that vein, McNair's
allegations are also insufficient because they are bereft of any
specific facts regarding the Supervisory Defendants' role in
supervising the Non-Supervisory Defendants. McNair "does not
allege any facts from which the Court could reasonably infer
that [the Supervisory Defendants] participated in this alleged
mistreatment, were present when it allegedly occurred, knew
about it, or were grossly negligent in any way." McAllister v.
N.Y.C. Police Dep't, 49 F. Supp. 2d 688, 700 (S.D.N.Y. 1999)
(citation omitted)). The Supervisory Defendants "cannot be held
personally liable for constitutional violations by other
Defendants merely 'because [they] w[ere] in . . . high
position[s] of authority in the prison system." Laporte, 2018
WL 794621, at *7 (quoting Wright v. Smith, 21 F.3d 496, 501 (2d
Cir. 1994)). Personal involvement requires a showing of more
than the "linkage in the prison chain of command." Samuels, 168
F. Supp. 3d at 637 (citation omitted).

Finally, the SAC lacks any allegation that the Supervisory Defendants failed to intervene in "Caucasian Six Upper North C.O. R.N.D.C. John Doe's" alleged use of the chemical agent or "R.N.D.C. Intake C.O. African American John Doe's" alleged denial of medical care, failed to remedy a known wrong, or "exhibit[ed] deliberate indifference" to McNair's rights "by failing to act on information indicating that unconstitutional acts were occurring." Laporte, 2018 WL 794621, at *7 (citation omitted).

Nor does McNair allege that the Supervisory Defendants were aware that "Caucasian Six Upper North C.O. R.N.D.C. John Doe" or "R.N.D.C. Intake C.O. African American John Doe" had a history of using chemical agents or denying medical care, such that the Court could reasonably infer the Supervisory Defendants knew a chemical agent may be used against McNair or that he may be denied medical care. See id.; see also Sash, 674 F. Supp. 2d at 545 (finding no personal involvement where the supervisory defendant was not "aware [the non-supervisory defendants] were going to use excessive force" and had no "realistic opportunity to intervene to prevent the harm from occurring" (citation omitted)).

Accordingly, because McNair does not plausibly allege the Supervisory Defendants' personal involvement even under the most

liberal application of Colon, all claims against the Supervisory Defendants are dismissed.

### 2. 18 U.S.C. § 1983 Claims Against Non-Supervisory Defendants

#### i. Excessive Force Claim Against "Caucasian Six Upper North C.O. R.N.D.C. John Doe"

"[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." Knight v. City of New York, No. 16-CV-7888 (RJS), 2019 WL 95480, at *3 (S.D.N.Y. Jan. 2, 2019) (quoting United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999)). For such a claim, a "pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley, 135 S. Ct. at 2473. "Although the Supreme Court left open the possibility that the reckless use of force may suffice in certain cases, it reiterated that the accidental or negligent infliction of harm 'is categorically beneath the threshold of constitutional due process.'" Holmes, 2018 WL 4211311, at *5 (quoting Kingsley, 135 S. Ct. 2472-73).

Contextual factors bearing on the objective reasonableness of the force include "the relationship between the need for the use of force and the amount of force used[;] . . . the extent of the plaintiff's injury; any effort made by the officer to temper

29

or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Edrei v. Maguire, 892 F.3d 525, 534 (2d Cir. 2018) (quoting Kingsley, 135 S. Ct. at 2473). "These non-exhaustive considerations 'inform the ultimate Fourteenth Amendment inquiry: whether the governmental action was rationally related to a legitimate governmental objective.'" Holmes, 2018 WL 4211311, at *5 (quoting Edrei, 892 F.3d at 536).

In the SAC, McNair alleges that, during a discussion about his psychotropic medications with "Caucasian Six Upper North C.O. R.N.D.C. John Doe," "Caucasian Six Upper North C.O. R.N.D.C. John Doe" sprayed McNair with a chemical agent at close range, even though McNair "did not pose a threat," was behind two steel doors, and "did not in fact make any physical contact with" "Caucasian Six Upper North C.O. R.N.D.C. John Doe." (Id. at 2-3.) Before spraying McNair, "Caucasian Six Upper North C.O. R.N.D.C. John Doe" "ignored [a] custom and policy" requiring him to check with medical services to see whether McNair suffered from a medical condition where the use of a chemical agent on McNair could result in McNair's death. (Id. at 2.)

Although not identical, the instant case is analogous
to Tracy v. Freshwater, 623 F.3d 90 (2d Cir. 2010), a case in
which the Court of Appeals affirmed the denial of summary
judgment where the defendant and the plaintiff-detainee disputed
whether plaintiff had been handcuffed at the time he was sprayed
and whether he had been physically resistant. Id. at 98.
Because the district court was "compelled . . . to credit
[plaintiff's] version of the events," the Court of Appeals held
that "a reasonable juror could find that the use of pepper spray
deployed mere inches away from the face of a defendant already
in handcuffs and offering no further active resistance
constituted an unreasonable use of force." Id.

Ponte does not dispute that when "Caucasian Six Upper North
C.O. R.N.D.C. John Doe" sprayed McNair at close range, McNair
"did not pose a threat." (See Motion to Dismiss Mem. at 6
(quoting SAC at 2).) However, like the circumstances in Tracy,
McNair and Ponte appear to dispute two central facts: whether
McNair was behind two steel doors and made any physical contact
with "Caucasian Six Upper North C.O. R.N.D.C. John Doe" when
"Caucasian Six Upper North C.O. R.N.D.C. John Doe" sprayed him.
(See SAC at 2-3 (including these facts); Motion to Dismiss Mem.
at 6, 6 n.1 (omitting these facts from the "Statement of Facts,"
despite explicitly acknowledging that "[f]or the purposes of
this motion, Defendant, as he must, assumes the factual

allegations contained in the Second Amended Complaint to be true").) "Crediting [McNair's] version of events[,] . . . as we must," Knight, 2019 WL 95480, at *4 (citing Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 427 (2d Cir. 2009)), "the Court is plainly bound by Tracy's holding that deploying pepper spray on a detainee, who," Knight, 2019 WL 95480, at *4, as Ponte and McNair agree "did not pose a threat" and, as McNair claims, was behind two steel doors and "did not in fact make any physical contact with" "Caucasian Six Upper North C.O. R.N.D.C. John Doe" at the time "Caucasian Six Upper North C.O. R.N.D.C. John Doe" sprayed him, (SAC at 2-3), "could constitute unreasonable force in violation of the Fourteenth Amendment." Knight, 2019 WL 95480, at *4.

"[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" Id. at *3 (quoting Kingsley, 135 S. Ct. at 2473). "[T]he Court must determine objective reasonableness 'from the perspective of a reasonable officer on the scene, including what the officer knew at the time,' and accounting for the '"legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained."'" Id.; see also Knight, 2019 WL 95480, at *3 ("'[T]he effective management of the detention facility once the individual is confined' has been determined by the Supreme Court to be 'a valid objective that may justify

imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment.'" (quoting Bell v. Wolfish, 441 U.S. 520, 540, (1979)).

Although McNair "does not expressly allege it, the [SAC] says enough for this Court to infer that [McNair] had done nothing to warrant the use of a chemical spray." Roundtree v. City of New York, No. 15CV8198 (WHP), 2018 WL 1586473, at *7 (S.D.N.Y. Mar. 28, 2018); see Velez v. McDonald, No. 10cv483 (JBA), 2011 WL 1215442, at *4 (D. Conn. Mar. 27, 2011) ("[I]t can readily be inferred from his allegations that the amount of force used by Defendants far exceeded the need for that force, particularly in the absence of any defined threat or any attempt to temper the severity of Defendants' treatment of [plaintiff]."); cf. Vargas v. N.Y.C. Dep't of Corr., No. 17 Civ. 2544 (JGK), 2018 WL 3392873, at *3 (S.D.N.Y. July 12, 2018) ("With respect to the amount of force that was actually used against the plaintiff, it was objectively reasonable because Officer Trotman was attempting to stop an inmate fight, which is a legitimate governmental objective for a DOC Officer and he did not use more force than necessary to quell the inmate altercation.").

Further, the Court finds that "Caucasian Six Upper North C.O. R.N.D.C. John Doe" "acted intentionally or recklessly failed to act with reasonable care." Roundtree, 2018 WL 1586473, at *7. Specifically, before spraying McNair, "Caucasian Six Upper North C.O. R.N.D.C. John Doe" "ignored [a] custom and policy" requiring him to check with medical services to see whether McNair suffered from a medical condition where the use of a chemical agent on McNair could result in McNair's death. (SAC at 2.) In addition, a medical permit states that McNair should not be exposed to chemical agents. (Id. at 3.)

Although the Court has already found above that McNair failed to establish supervisory liability against the Supervisory Defendants based on the existence of the Medical Condition Policy or Custom, for purposes of its excessive force analysis, the Court "credit[s] [McNair's] version of the events" and assumes such a policy or custom existed at the time of the incident. Tracy, 623 F.3d at 98. In doing so, the Court finds McNair has sufficiently alleged that "Caucasian Six Upper North C.O. R.N.D.C. John Doe" acted "purposefully or knowingly, 'or possibly [recklessly],'" Vargas, 2018 WL 3392873, at *2 (quoting Kingsley, 135 S. Ct. at 2472), because "Caucasian Six Upper North C.O. R.N.D.C. John Doe" knew about but ignored the Medical Condition Policy or Custom and medical permit when he sprayed McNair, (see SAC at 2). Cf. Vargas, 2018 WL 3392873, at *3

34

("[T]he plaintiff alleges that Officer Trotman intended to spray the fighting inmates. At most, Officer Trotman's actions against the plaintiff were negligent, and thus he did not act with the requisite intent to use force against the plaintiff.").

Accordingly, because McNair has sufficiently pled that "Caucasian Six Upper North C.O. R.N.D.C. John Doe" acted with the necessary intent for an excessive force claim and that his actions were objectively unreasonable, the Court denies Ponte's motion to dismiss this claim against "Caucasian Six Upper North C.O. R.N.D.C. John Doe" on 12(b)(6) grounds.

### ii. Deliberate Indifference to Conditions of Confinement Claim Against "Caucasian Six Upper North C.O. R.N.D.C. John Doe"

In order to establish a § 1983 claim of deliberate indifference to conditions of confinement, a pretrial detainee must demonstrate that a defendant "acted with deliberate indifference to the challenged conditions." Darnell, 849 F.3d at 29. This involves satisfying two prongs: an "objective prong"; and a subjective or "mens rea prong." Id. To prove the objective prong, the pretrial detainee "must show that the condition[ ] . . . pose[s] an unreasonable risk of serious damage to his health,' which includes the risk of serious damage to 'physical and mental soundness.'" Id. at 30 (citations omitted)). In making that evaluation, "[t]here is no 'static

35

test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" Id. (citing Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995)).

To prove the mens rea prong, the pretrial detainee must show that the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 35. "As with a claim for excessive force, sustaining a claim for deliberate indifference to conditions of confinement requires a plausible allegation that the defendants acted with at least recklessness in imposing the condition." Vargas, 2018 WL 3392873, at *3 (quoting Darnell, 849 F.3d at 36). "Allegations of 'mere negligence' do not suffice." Sanders v. City of New York, No. 16 Civ. 7426 (PGG), 2018 WL 3117508, at *6 (S.D.N.Y. June 25, 2018) (quoting Darnell, 849 F.3d at 36). Instead, "an alleged 'reckless or intentional action (or inaction)' is only sufficient if it is 'the product of a voluntary act (or omission) by the [defendant-]official.'" Sanders, 2018 WL 3117508, at *6 (quoting Darnell, at 36 n.16). However, the pretrial detainee "does not need to show that any defendant was

subjectively aware of the harmfulness associated with the conditions." Rodriguez v. City of New York, No. 15-CV-07945 (ALC), 2018 WL 1276826, at *3 (S.D.N.Y. Mar. 9, 2018).

McNair suffers from "serious and persistent" physical medical conditions, namely, congestive heart failure, high blood pressure, and seizures; due to these medical conditions, exposure to a chemical agent could result in McNair's death. (SAC at 2-3.) McNair has previously received emergency treatment in the clinic for chest pains and difficulty breathing. (Id. at 3.) A medical permit states that McNair should not be exposed to chemical agents. (Id.) McNair also suffers from "persistent and serious" psychological medical conditions, namely, schizoaffective disorder, depression, and anxiety. (Id.) Before spraying McNair, "Caucasian Six Upper North C.O. R.N.D.C. John Doe" "ignored [a] custom and policy" requiring him to check with medical services to see whether McNair suffered from a medical condition where the use of a chemical agent on McNair could result in McNair's death.[12] (Id. at 2.)

---

[12] As noted above, although the Court has already found that McNair failed to establish supervisory liability against the Supervisory Defendants based on the existence of the Medical Condition Policy or Custom, for purposes of its deliberate indifference to conditions of confinement analysis, the Court "credit[s] [McNair's] version of the events" and (continued)

Drawing all reasonable inferences in McNair's favor, as the Court must, see Holmes, 2018 WL 4211311, at *6, the Court finds that McNair's allegations indicate the deployment of the chemical agent "pose[d] an unreasonable risk of serious damage to his health," Darnell, 849 F.3d at 30 (quoting Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013)), because, "Caucasian Six Upper North C.O. R.N.D.C. John Doe" sprayed McNair without regard to whether McNair suffered from a physical or psychological medical condition and whether the administration of the chemical agent would exacerbate any of McNair's conditions.

As such, the Court further finds that "Caucasian Six Upper North C.O. R.N.D.C. John Doe" "knew of and disregarded" this risk of harm to McNair "leading up to the incident." Brown v. City of New York, No. 13-CV-06912 (TPG), 2017 WL 1390678, at *11 (S.D.N.Y. Apr. 17, 2017); see also Gumora v. City of New York, No. 17 CIV. 2300 (LGS), 2018 WL 736018, at *6 (S.D.N.Y. Feb. 5, 2018) ("[Plaintiff's] papers plead facts sufficient to suggest that the [New York Department of Corrections] staff knew about the prevalence of fires in the [prison], but did not take reasonable precautions to deal with the fires and accompanying smoke."); Rodriguez, 2018 WL 1276826, at *4 (finding plaintiff's

(continued) assumes such a policy or custom existed at the time of the incident. Tracy, 623 F.3d at 98.

allegations sufficient to state a claim where plaintiff's chronic lower-back pain "was known to the Defendants through his Correctional Health Services medical records" and "Defendants denied his repeated requests for the second mattress or replacement mattress, despite knowledge of his condition").

This Court has addressed conditions of confinement claims in which plaintiffs were exposed to chemical agents at least three times since the Supreme Court decided Kingsley. See McArdle v. Ponte, No. 17CV2806 (WHP), 2018 WL 5045337 (S.D.N.Y. Oct. 17, 2018); Holmes, 2018 WL 4211311, at *5-6; Vargas, 2018 WL 3392873, at *3. Although the Court found the plaintiff failed to state a condition of confinement claim in each of these cases, they are all factually distinguishable from the instant case.

Here, "Caucasian Six Upper North C.O. R.N.D.C. John Doe" sprayed McNair, and only McNair, at close range during a discussion about McNair's psychotropic medications, even though McNair "did not pose a threat," was behind two steel doors, and "did not in fact make any physical contact with" "Caucasian Six Upper North C.O. R.N.D.C. John Doe." (Id. at 2-3.) Dissimilarly, the McArdle, Holmes, and Vargas plaintiffs were inadvertently sprayed by defendants attempting to de-escalate prisoner conflicts between or caused by non-party inmates.

McArdle, 2018 WL 5045337, at *1, *4 (finding plaintiff's "allegations suggest that his exposure to pepper spray, while unfortunate, was at most negligent or accidental" where plaintiff acknowledged he was merely an innocent bystander in the vicinity where the spray was deployed); Holmes, 2018 WL 4211311, at *2, *6 (finding plaintiff failed to allege defendant acted with the requisite mens rea where defendant sprayed inmates in a nearby cell with a chemical spray and the gas from the spray leaked into plaintiff's cell); Vargas, 2018 WL 3392873, at *3 ("[P]laintiff alleges that [defendant] intended to spray the fighting inmates and that the plaintiff 'also got sprayed'"). Although the Court certainly recognizes that "'[w]ide ranging deference' must be accorded to the actions of prison officials in responding to an inmate confrontation," McArdle, 2018 WL 5045337, at *4 (quoting Perez v. City of New York, No. 17 Civ. 366 (BMC) (LB), 2017 WL 684186, at *2 (E.D.N.Y. Feb. 21, 2017)), such deference does not change the result here.

Accordingly, the Court finds McNair has sufficiently stated a claim of deliberate indifference to conditions of confinement against "Caucasian Six Upper North C.O. R.N.D.C. John Doe" and therefore denies Ponte's motion to dismiss this claim on 12(b)(6) grounds.

### iii. Deliberate Indifference to Medical Needs Claim Against "R.N.D.C. Intake C.O. African American John Doe"

To state a claim for deliberate indifference to medical needs under § 1983, a plaintiff must satisfy a two-prong test. "The first prong is objective: 'the alleged deprivation of adequate medical care must be sufficiently serious.'" White v. City of New York, No. 16 Civ. 6183 (LGS), 2017 WL 3575700, at *3 (S.D.N.Y. Aug. 17, 2017) (citation omitted). To satisfy the first prong, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Walker, 717 F.3d at 125. To create such risk, a condition must be one "of urgency, one that may produce death, degeneration, or extreme pain, exists." Holmes, 2018 WL 4211311, at *6 (citations omitted).

Examples of symptoms or injuries that reveal a sufficiently serious condition include ones that "a reasonable doctor or patient would surely consider important and meriting comment or treatment," that would "significantly affect the patient's daily activities," or "reflect the existence of substantial pain." Rodriguez, 2017 WL 118027, at *9 (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). Nonetheless, "[t]here is no settled, precise metric to guide a court in its estimation of

the seriousness of a prisoner's medical condition." Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003). A court's inquiry, therefore, "must be tailored to the specific circumstances of each case." Smith v. Outlaw, No. 15-CV-9961 (RA), 2017 WL 4417699, at *2 (S.D.N.Y. Sept. 30, 2017) (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)).

The second prong is subjective and requires a court to consider the defendant's mental state. Under this prong, "a defendant possesses the requisite mens rea when he acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm to the pretrial detainee would result." Feliciano, 2017 WL 1189747, at *13 (applying Darnell to a deliberate indifference to medical needs claim under § 1983). A defendant's "actions [must be] more than merely negligent." Id. (quoting Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006)).

"The objective prong is the same regardless of whether the plaintiff is a pretrial detainee or a [convicted] prisoner." White, 2017 WL 3575700, at *3 (citing Feliciano, 2017 WL 1189747, at *10); see also Ackridge v. Aramark Corr. Food Servs., No. 16-CV-6301, 2018 WL 1626175, at *19 n.19 (S.D.N.Y. Mar. 30, 2018) (holding that, even after Darnell, "[t]he first element" of "deliberate indifference claims . . . 'is evaluated

42

the same way under both the Eighth Amendment and Fourteenth
Amendment'" (quoting Darnell, 849 F.3d at 30)).  Accordingly,
although for purposes of deciding the Motion to Dismiss the
Court views McNair as a pretrial detainee bringing this claim
under the Fourteenth Amendment, the Court necessarily relies on
cases evaluating Eighth Amendment claims brought by convicted
prisoners in considering the objective prong.

McNair asserts that he has "persistent[ly]" suffered from
several physical medical conditions – namely, congestive heart
failure, high blood pressure, and seizures – and several
psychological medical conditions – namely, schizoaffective
disorder, depression, and anxiety.  (SAC at 2-3.)  McNair
further alleges that, as a result of the incident, he now
suffers from blurred vision, depression, heightened anxiety,
auditory hallucinations, suicidal ideations, nightmares,
increased cardiac problems, and wears a pacemaker in his chest
for "low percentage of ejection fraction."  (Id. at 3-4.)  As to
the incident itself, McNair alleges that after "Caucasian Six
Upper North C.O. R.N.D.C. John Doe" sprayed him with the
chemical agent, McNair was escorted to the R.N.D.C.'s intake
area by "R.N.D.C. Intake C.O. African American John Doe."  (Id.
at 2.)  Once there, "R.N.D.C. Intake C.O. African American John
Doe" refused to have McNair seen by medical staff.  (Id.)
"R.N.D.C. Intake C.O. African American John Doe" also did not

decontaminate McNair following his exposure to the chemical agent, as required by "their custom [or] policy."[13]  (Id.)

The Court finds that McNair "ha[s] not pled facts sufficient to plausibly claim that [his] injuries were objectively serious enough to fall within the protection of the Constitution." Rivera v. Bloomberg, No. 11 Civ. 4325 (PGG), 2012 WL 3655830, at *8 (S.D.N.Y. Aug. 27, 2012).  Even liberally construing the SAC, McNair fails to allege that his physical appearance manifested any medical problem which required immediate attention both while "R.N.D.C. Intake C.O. African American John Doe" was escorting him to the intake area and when McNair was inside of the intake area with "R.N.D.C. Intake C.O. African American John Doe."

This Court has repeatedly "distinguish[ed] the mere 'existence of [an asthmatic] condition . . . from the situation in which an inmate is suffering an actual [asthma] attack,'" Lewis v. Clarkstown Police Dep't, No. 11-CV-2487(ER), 2014 WL 1364934, at *7 (S.D.N.Y. Mar. 31, 2014), adhered to on reconsideration, No. 11 Civ. 2487(ER), 2014 WL 6883468 (S.D.N.Y.

---

[13]  Although the Court has already found that McNair failed to establish supervisory liability against the Supervisory Defendants based on the existence of the Decontamination Policy or Custom, for purposes of its deliberate indifference to medical needs analysis, the Court "credit[s] [McNair's] version of the events" and assumes such a policy or custom existed at the time of the incident. Tracy, 623 F.3d at 98.

Dec. 8, 2014) (citation omitted)), and has oft-held that an "asthmatic condition alone does not impose a substantial risk of serious harm," Vazquez v. Spear, No. 12CV6883(VB), 2014 WL 3887880, at *6 (S.D.N.Y. Aug. 5, 2014). The Court is convinced that the same reasoning applies here to McNair's various medical conditions.

As with an asthmatic condition, McNair's "condition[s] might have imposed a substantial risk of harm if at the time" the chemical agent was deployed he "was already suffering from [a physical or psychological] attack." Id. However, McNair merely alleges that he had "persistent[ly]" suffered from various medical conditions; he "has not alleged facts sufficient to support the inference" that he was suffering any attack at the time the chemical agent was deployed or that his exposure to the agent precipitated any attack. Id. In failing to show that he was "actively" suffering from any symptoms or injuries after the chemical agent was deployed, McNair "failed to present concrete evidence of a 'condition of urgency . . . that may produce death, degeneration or extreme pain.'" Vondette v. McDonald, No. 00 CIV 6874(DC), 2001 WL 1551152, at *5 (S.D.N.Y. Dec. 5, 2001) (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)).

Furthermore, McNair's allegations that, as a result of the incident, he now suffers from blurred vision, depression, heightened anxiety, auditory hallucinations, suicidal ideations, nightmares, increased cardiac problems, and wears a pacemaker in his chest for "low percentage of ejection fraction" do not save his claim from dismissal. (SAC at 3-4.) Even "[a]ccepting [these allegations] as true," as the Court must, Outlaw, 2017 WL 4417699, at *3, they do not change the fact that McNair failed to provide any factual allegations to describe the extent of any symptoms or injuries that might have required medical attention while he was being escorted to and inside of the intake area with "R.N.D.C. Intake C.O. African American John Doe." Cf. id. at *4 (finding plaintiff plausibly alleged a deliberate indifference to medical needs claim where the Court was able to "draw[] the reasonable inference that [p]laintiff was either suffering a heart attack at the time he presented to Rikers personnel or that his symptoms were at least suggestive of a heart attack or other serious cardiac condition"); West v. City of New York, No. 13 Civ. 5155(PAE), 2014 WL 4290813, at *5 (S.D.N.Y. Aug. 28, 2014) (finding plaintiff met objective prong where he specifically alleged that, after being sprayed with mace and brought to a shower by corrections officers, he "was coughing and struggling to breathe; his skin was burning; and he

may have been suffering complications related to his preexisting heart murmur").

As McNair has described no symptoms or injuries immediately resulting from his exposure to the chemical agent that "a reasonable doctor or patient would surely consider important and meriting comment or treatment," "significantly affect[ed] [his] daily activities," or caused him "substantial pain," McNair's allegations do not support a finding of a serious medical condition. Rodriguez, 2017 WL 118027, at *9 (quoting Chance, 143 F.3d at 702). McNair's "failure to satisfy the objective prong is fatal to his claim against ["R.N.D.C. Intake C.O. African American John Doe"]," Holmes, 2018 WL 4211311, at *7, and therefore, "this Court need not assess whether [McNair] ha[s] sufficiently alleged ["R.N.D.C. Intake C.O. African American John Doe's"] culpable state of mind," Bloomberg, 2012 WL 3655830, at *8.

Accordingly, the Court grants Ponte's motion to dismiss this claim against "R.N.D.C. Intake C.O. African American John Doe" on 12(b)(6) grounds.

### iv. Equal Protection Claim Against "R.N.D.C. Intake C.O. African American John Doe"

"The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the

47

same manner." Ackridge, 2018 WL 1626175, at *20 (quoting Allen v. Cuomo, 100 F.3d 253, 260 (2d Cir. 1996)). "In other words, 'the Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Ackridge, 2018 WL 1626175, at *20 (quoting Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005)). In order sufficiently to state a violation of the Equal Protection Clause, a plaintiff must allege "that he was treated differently [from] others similarly situated as a result of intentional or purposeful discrimination." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).

McNair alleges he "was deprived of his Fourteenth Right to have access to adequate and prompt medical care and tre[a]tment consistent with the mi[n]imum standards of the Board of C[o]rrection Staff." (SAC at 2.) Further, McNair claims "African American Captain John Doe" "in the scope of his duty and responsibility failed to fulfill said duty to Plaintiff under the Equal Protection Clause of the Fourteenth Amendment." (Id.) This claim must fail because, as set forth above, McNair has not sufficiently pled the personal involvement of "African

American Captain John Doe" under a theory of supervisory liability. However, the substance of McNair's allegation – that he was denied medical care – compels the Court to construe the SAC as bringing this Equal Protection Clause claim against "R.N.D.C. Intake C.O. African American John Doe," the Defendant McNair explicitly alleges refused to have him seen by medical staff and did not decontaminate him following his exposure to the chemical agent, as required by "their custom [or] policy."[14] (SAC at 2.) Nonetheless, McNair fails to state a claim against "R.N.D.C. Intake C.O. African American John Doe."

The deficiency in McNair's Equal Protection Clause claim is that it "does not allege that he was treated differently from any identified individuals," and "is completely devoid of any reference to 'similarly situated' or 'substantially similar' individuals." Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013); see also id. at 433 (dismissing the plaintiff's Equal Protection Clause claim under theories of selective enforcement and class of one where the plaintiff "simply" alleged that the defendants "singled out [the]

---

[14] As noted above, although the Court has already found that McNair failed to establish supervisory liability against the Supervisory Defendants based on the existence of the Decontamination Policy or Custom, for purposes of its Equal Protection Clause analysis, the Court "credit[s] [McNair's] version of the events" and assumes such a policy or custom existed at the time of the incident. Tracy, 623 F.3d at 98.

plaintiff, in part, because of his exercise of constitutional rights"). Indeed, McNair fails to identify any other inmates also in need of medical services who were treated better than he was. "The absence of comparators is fatal to" McNair's Equal Protection Clause claim. Ackridge, 2018 WL 1626175, at *21 (quoting Gilliam v. Baez, No. 15-CV-6631 (KMK), 2017 WL 476733, at *8 (S.D.N.Y. Feb. 2, 2017)).

Additionally, McNair does not sufficiently allege that being denied medical care was the "result of intentional or purposeful discrimination." Phillips, 408 F.3d at 129. "Proof that discriminatory intent was a motivating factor is required to show a violation of the Equal Protection Clause." Okin, 577 F.3d at 438. McNair alleges his lack of "access to adequate and prompt medical care and tre[a]tment" ran contrary to "the mi[n]imum standards of the Board of C[o]rrection Staff." (SAC at 2.) However, "[t]his type of conclusory allegation is insufficient to state a claim." Ackridge, 2018 WL 1626175, at *21; see also Collins v. Sovereign Bank, 482 F. Supp. 2d 235, 240 (D. Conn. 2007) ("'Conclusory allegation[s] of discrimination,' 'without evidentiary support or allegations of particularized incidents' and absent allegations of discriminatory intent, do 'not state a valid claim and so cannot withstand a motion to dismiss.'" (citation omitted)).

Accordingly, the Court grants Ponte's motion to dismiss this claim against "R.N.D.C. Intake C.O. African American John Doe" on 12(b)(6) grounds.

## B. Federal Rules of Civil Procedure 16(f) and 41(b)

Although McNair's excessive force and deliberate indifference to conditions of confinement claims against "Caucasian Six Upper North C.O. R.N.D.C. John Doe" survive dismissal under Federal Rule of Civil Procedure 12(b)(6), the Court finds dismissal of all of McNair's claims in the SAC against all Defendants is warranted under Federal Rules of Civil Procedure 16(f) and 41(b). In reaching this conclusion, the Court addresses the overlapping considerations in these rules more or less in order and concludes that each factor weighs in favor of dismissal of the SAC in its entirety with prejudice.

### 1. Length of Default and Willfulness

As of the date of this Order, McNair has yet to comply with the June 2018 Order directing him to inform the Court if he wanted it to consider his February "Opposition" as his opposition to the Motion to Dismiss or if he wanted to file a separate opposition by July 3, 2018. (See June 2018 Order at 1-2.) In fact, McNair has failed to take any action with respect to his claims since February 2018. See Virola v. Entire GRVC Dep't of Mental Health Hygiene Servs., No. 12 Civ. 1005(ER),

2014 WL 793082, at *2 (S.D.N.Y. Feb. 21, 2014) (finding first factor weighed in favor of dismissal where plaintiff failed to take any action with respect to his claims for at least eight months). It also bears emphasizing that McNair's failure to inform the Court or file an opposition has persisted in the face of Ponte's timely service of the Motion to Dismiss and the Court's scheduling order setting an April 6, 2018 deadline for McNair's opposition. (See Declaration of Service at 1; March 2018 Order at 3.)

McNair's failure to comply with court orders dates to 2016, when he failed to file an amended complaint within thirty days of receiving Gorle's identification from the New York City Law Department. (See Valentin Order at 2; see also August 2017 Order at 1 (noting McNair had yet to file an amended complaint).) McNair's noncompliance then continued into 2017, when he failed to name Gorle in the AC's caption. (See AC at 1.)

Following his filing of the AC, the Court explicitly advised McNair at the Initial Pretrial Conference that his pleadings must be accurate; specifically, the Court told McNair that the date and names of the Defendants must be correct. (See Init. Pre. Conf. Tr. at 3:1-25, 4:4-5:9.) Indeed, Federal Rule of Civil Procedure 9(f) expressly states that that "[a]n

allegation of time or place is material when testing the
sufficiency of a pleading." FED. R. CIV. P. 9(f). However,
despite receiving an opportunity to amend the AC from the Court,
(see January 2018 Order at 1), McNair continued his willful
disobedience by failing to identify the SAC John Doe Defendants
and failing to include the correct date of the incident in the
SAC, (see SAC at 1).

The fact that McNair followed parts of court orders or
eventually chose to follow court orders is further evidence of
his willful flouting of the Court's directives. For instance,
in the August 2017 Order, the Court ordered McNair to file an
amended complaint by September 15, 2017 that named Gorle. (See
August 2017 Order at 1.) Although McNair did not name Gorle in
the AC, he did timely file it on September 14, 2017. (See AC at
1.)

Additionally, although the Court does not consider the
February "Opposition" McNair's response to the Motion to
Dismiss, (June 2018 Order at 1), it does give weight to the fact
that, after the numerous chances it afforded McNair to name the
proper Defendants, (see, e.g., January 2018 Order at 1), McNair
finally did so in the caption of the February "Opposition,"
(February "Opposition" at 1). "This pattern amply demonstrates
that [McNair] is able to churn out documents when he wishes to

do so," Keaton v. City of New York, No. 11 Civ. 9619 (DAB)
(MHD), 2013 WL 1987239, at *4 (S.D.N.Y. Apr. 23, 2013), report
and recommendation adopted, No. 11 Civ. 9619 (DAB), 2013 WL
1971984 (S.D.N.Y. May 14, 2013), yet he has offered no
explanation for his failure fully and promptly to follow the
court's orders.

Put simply, McNair "has shown that he has suffici[ent]
understanding to communicate with the court and his adversary,
and yet he has chosen to remain silent since" February 2018.
Id. Accordingly, McNair's noncompliance is "viewed . . . as
willful, as well as prolonged," and therefore weighs in favor of
dismissal. Id.

### 2. Notice

The Court of Appeals has repeatedly held that "[t]he severe
sanction of dismissal with prejudice may be imposed even against
a plaintiff who is proceeding pro se, so long as a warning has
been given that noncompliance can result in dismissal."
Valentine, 29 F.3d at 50 (citations omitted). Such "[a] warning
to a pro se litigant must be . . . specific before it will
constitute a warning for the purpose of this analysis." Lucas
v. Miles, 84 F.3d 532, 535 (2d Cir. 1996).

The June 2018 Order clearly put McNair on notice that his
failure to inform the Court by July 3, 2018 if he wanted it to

consider the February "Opposition" as his opposition to the
Motion to Dismiss or if he wanted to file a separate opposition
to the Motion to Dismiss could result in the Court's granting of
the Motion to Dismiss. (June 2018 Order at 1-2.) McNair's
"subsequent inaction" in the face of this explicit warning
weighs in favor of dismissal. Peterson v. Apple Inc., No. 12
Civ. 6467(GBD)(GWG), 2013 WL 3467029, at *9 (S.D.N.Y. July 10,
2013), report and recommendation adopted, No. 12 CV 6467 (GBD)
(GWG), 2013 WL 3963456 (S.D.N.Y. Aug. 1, 2013) (quoting
Europacific Asset Mgmt. Corp. v. Tradescape, Corp., 233 F.R.D.
344, 353 (S.D.N.Y. 2005)); see also George v. City of New York,
Nos. 12 Civ. 6365(PKC)(JLC), 13 Civ. 3511(PKC)(JLC), 13 Civ.
3514(PKC)(JLC), 2013 WL 5943206, at *4 (S.D.N.Y. Nov. 6, 2013)
(finding single order "expressly warn[ing] that the Magistrate
Judge would recommend dismissal for failure to prosecute if
plaintiffs failed to comply with the Order" sufficed as
"meaningful" notice).

The Court also finds that the August 2017 Order
sufficiently warned McNair that his failure to timely file an
amended complaint naming Gorle could result in dismissal.
(August 2017 Order at 1.) Although McNair timely filed the AC,
to date, he has yet to comply with the Court's naming
instruction. Cf. Camara, 2001 WL 263006, at *5 (finding, where
plaintiff failed to comply with defendant's discovery requests,

"[i]t cannot be assumed that plaintiff understood the consequences of his failure" where "[t]he Court's warnings pertained to plaintiff's obligation to maintain contact with the Court and to diligently pursue his claim" but did not warn him that discovery-related failures could result in dismissal). Accordingly, this factor weighs in favor of dismissal.

### 3. Prejudice

"Courts have held that a continued delay in litigation caused by a dilatory plaintiff is in itself prejudicial to defendants." Rudder, 2014 WL 1349047, at *5 (citations omitted). Here, "prejudice may be . . . presumed" because McNair "has unreasonably delayed," Coats v. Dep't of Veteran Affairs, 268 F. App'x 125, 127 (2d Cir. 2008); McNair last contacted the Court and his adversaries regarding this matter in February 2018. This nearly thirteen-month delay far exceeds delays of six or seven months, which the Court of Appeals has found to be "significant." Id. (citing Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 666-68 (2d Cir. 1980)); see also Rudder, 2014 WL 1349047, at *5 ("Generally, the degree of prejudice caused begins to weigh in favor of granting a defendant's motion to dismiss with a delay of six months." (citing Chira, 634 F.2d at 666-68; Virola, 2014 WL 793082, at *3)).

Although there are "cases where delay is more moderate or excusable" and "the need to show actual prejudice is proportionally greater," this is not such a case. Lyell Theatre Corp., 682 F.2d at 43. McNair's delay is in no way moderate. In addition to failing to communicate at all with the Court and his adversaries for almost thirteen months, McNair has refused to follow court orders since 2016. See Rudder, 2014 WL 1349047, at *5 (finding the fact that "Defendants also experienced earlier delays over the course of 2013 caused by [the pro se litigant's] repeated failures to file an amended complaint, effect service, and appear for a court conference," in addition to an almost-six-month delay, further tipped in favor of dismissal).

The Court necessarily gives weight to the fact that McNair has done so even with the Court's repeated prodding and second chances. (See August 2017 Order at 1 (giving McNair "one final opportunity to file an amended complaint no later than September 15, 2017"); January 2018 Order at 1 ("grant[ing] [McNair] permission to amend the [AC] no later than February 1, 2018").) Further, the fact that McNair has previously followed parts of court orders is not just evidence of his willful conduct; it also makes clear that McNair has no excuse for failing fully to comply with them. Peterson, 2013 WL 3467029, at *10 (finding prejudice factor favored dismissal upon considering "the extent

to which the plaintiff's conduct was contumacious" where
plaintiff declined to comply with court orders for more than
five months (citation omitted)).

Accordingly, as Defendants "should not be forced to bear
the expense of defending a lawsuit when the plaintiff has shown
little or no interest in pursuing that lawsuit," Rudder, 2014 WL
1349047, at *5 (citation omitted), this factor tips in favor of
dismissal.

### 4. Balancing of Interests

Typically, "[t]here must be compelling evidence of an
extreme effect on court congestion before a litigant's right to
be heard is subrogated to the convenience of the court." Lucas,
84 F.3d at 535-36. At the same time, "[c]ourts in this district
have held that calendar congestion outweighed plaintiffs'
opportunity to be heard when the plaintiff has rebuffed
opportunities to be heard." St. Prix v. Sirius XM Satellite
Radio, No. 11 Civ. 1506 (CM)(KNF), 2014 WL 405812, at *4
(S.D.N.Y. Jan. 29, 2014) (citations omitted).

Here, although the Court "cannot say that this specific
case is a major contributor to the burden of the court's current
calendar," it recognizes that "there is a broader institutional
problem" with allowing McNair to "thumb his nose at the court
and the Federal Rules of Civil Procedure." Keaton, 2013 WL

1987239, at *4. McNair's "continued delay cannot vindicate [his] interest in receiving an opportunity to be heard unless he offers some indication that he intends to take up that opportunity." Dones, 2018 WL 4211314, at *1. Yet, McNair "has made no such indication." Id.; see also Moore v. Desposito, No. 15 CV 4319 (CBA)(LB), 2016 WL 10413064, at *2 (E.D.N.Y. Oct. 25, 2016), report and recommendation adopted, No. 15-CV-4319 (CBA) (LB), 2017 WL 5009844 (E.D.N.Y. Oct. 30, 2017) (finding "the balance between the Court's calendar obligations and plaintiff's right to be heard" weighed in favor of dismissal where plaintiff "ignored the Court's attempts to move th[e] case forward and plaintiff . . . neglected to provide any explanation for his inaction").

Indeed, it appears that McNair has "simply . . . refused to respond" to the Court's last order in June 2018, Rudder, 2014 WL 1349047, at *5, and "[i]t is not the function of this Court to chase dilatory plaintiffs while other litigants in this district seek access to the courts," Hibbert v. Apfel, No. 99 CIV.4246(SAS), 2000 WL 977683, at *3 (S.D.N.Y. July 17, 2000); see also Caussade v. United States, 293 F.R.D. 625, 631 (S.D.N.Y. 2013) (finding the Court's interest in managing its docket outweighed plaintiff's interest to be heard where plaintiff had been out of contact for five months and ignored discovery requests); Yang v. Greyhound Lines, Inc., No. 07 Civ.

6499(CM), 2008 WL 3126188, at *2 (S.D.N.Y. July 14, 2008)
(finding plaintiff who had "rebuffed every opportunity to be
heard . . . should take a back seat to the court's interest in
managing its docket").

Put simply, this "is not a trivial matter." Keaton, 2013
WL 1987239, at *4. McNair's defiance of court orders has
undercut the Court's ability to "ensure the prompt disposition
of this case" and "to manage this litigation in an efficient and
economical manner." Id. at *4-5. Accordingly, as ignoring
"this behavior . . . would undermine the stated institutional
policies and leave to a litigant the choice of whether to comply
with court mandates," id. at *5, the Court finds this factor
weighs in favor of dismissal.

### 5. Alternative Remedies

Although the Court recognizes that "district courts should
be especially hesitant to dismiss for procedural deficiencies
where, as here, the failure is by a pro se litigant," Lucas, 84
F.3d at 535, the Court finds "there is nothing in the record to
suggest that a sanction less serious than dismissal will resolve
the plaintiff's failure to cooperate," Singelton v. City of New
York, No. 14cv9355 (DLC), 2015 WL 9581781, at *2 (S.D.N.Y. Dec.
30, 2015). Further orders instructing McNair to comply or
granting him extensions of time would be "pointless," not only

because he "has repeatedly proven willing to defy such orders, as he so pleases," Keaton, 2013 WL 1987239, at *5, but also because of his "failure to maintain contact with the Court," Virola, 2014 WL 793082, at *3; see also Moore, 2016 WL 10413064, at *2 ("[F]urther warnings are futile as the Court presumes plaintiff understood the consequences of his failure to comply with the Court's [earlier] Order."). Moreover, "[a] financial penalty may be even stronger medicine than dismissal for a pro se plaintiff [like McNair] proceeding in forma pauperis." Dones, 2018 WL 4211314, at *1. (See Order Granting IFP Application in Prisoner Case, dated Apr. 20, 2016 [dkt. no. 7], 1.) The Court therefore finds this factor weighs in favor of dismissal.

Although he proceeds pro se, McNair has the same obligation to comply with court orders as any other litigant. He defied that obligation, and "like all litigants, [he] must suffer the consequences of [his] actions." Rudder, 2014 WL 1349047, at *3 (quoting McDonald v. Head Criminal Court Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988)). For the reasons stated above, the Court finds dismissal of the SAC in its entirety with prejudice is warranted under Federal Rules of Civil Procedure 16(f) and 41(b).

### C. Abandonment

To date, the Court has not heard from McNair in response to the June 2018 Order. Although he filed the February "Opposition," because he did so before Ponte filed the Motion to Dismiss, the Court has held that it is not technically a response to the Motion to Dismiss. (June 2018 Order at 1.)

Accordingly, as McNair has not yet responded to the Motion to Dismiss and has had no contact with the Court regarding this case since February 2018, the Court finds that McNair has failed to respond to the Motion to Dismiss and that his claims are indeed abandoned. See Williams v. Mirabal, No. 11 Civ. 366(JMF), 2013 WL 174187, at *2 (S.D.N.Y. Jan. 16, 2013) (deeming pro se plaintiff's claims abandoned where plaintiff had not responded to defendants' motion to dismiss and the Court had no contact with plaintiff for three months).

### D. State-Law Claims

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." Carnegie-Mellon Univ. v. Cohill, 484 U.S.

343, 350 (1988). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims McNair may be asserting. See Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997))).

## IV.  CONCLUSION

For the reasons set forth above, the Motion to Dismiss [dkt. no. 39] is granted. The Clerk if the Court shall mark this action closed and all pending motions denied as moot.

The Clerk of Court shall mail a copy of this order to the Plaintiff.

SO ORDERED.


Dated:      New York, New York
            March 29, 2019

                        LORETTA A. PRESKA
                        Senior United States District Judge